[Civ. No. 1377. Fourth Appellate District.—April 12, 1935.]

EDWARD BOURDIEU, Plaintiff and Appellant, v. R. C. BAKER et al., Respondents; MARIE BOURDIEU, Intervener and Appellant.

William H. Metson and J. W. Coleberd for Plaintiff and Appellant.

A. H. Ricketts and David E. Peckinpah for Intervener and Appellant.

Everts, Ewing, Wild & Everts, L. N. Barber and Fred Eugene Butler for Respondents.

BARNARD, P. J.—The plaintiff brought this action to quiet title to approximately 820 acres of land in Fresno County. The defendants set up a claim to the land under an option to purchase the same, which reads as follows:

"Coalinga, California,
"October first, A. D. 1928.

"Received of Hans R. Sumpf the sum of ten dollars, as part payment for the following described real property situate County of Fresno, State of California (description).

The entire price to be paid for said above described real property is $25,000.—(twenty-five thousand dollars), and to be paid as follows:

"$3000.—on or before thirty days from date hereof, the balance to be paid on or before six months from date hereof, or purchaser to assume mortgage of $22,000.— and clear other property also included in said mortgage.

"Title to be perfect; good and sufficient deed to be executed and delivered by the said Ed Bourdieu to Hans R. Sumpf or his assigns on or before the first day of March, A. D. 1929, together with an abstract showing a merchantable title.

"Provided, however, that the payment of $3,000.— is paid at said date, but if not paid on or before the said first day of November A. D. 1928, then this contract to be of no effect and in that event the said $10.—to be retained by Ed. Bourdieu as liquidated damages.

"Time is of the essence of this contract.

"ED. BOURDIEU,
"HANS R. SUMPF.

"Witnessed by
"SOPHIE M. SUMPF."

It is alleged that this agreement had been assigned by Sumpf to a partnership composed of the four individual defendants. It is further alleged that on or about October 29, 1928, the defendants caused the sum of $3,000 to be placed with the Coalinga branch of the Security-First National Bank of Los Angeles with instructions to deliver the same to Ed Bourdieu upon demand. Another allegation is that the defendants had performed all acts necessary to be performed in accordance with the terms and conditions of the contract referred to and "still stand ready, able and willing to perform any further and additional terms thereof". The wife of the plaintiff filed a complaint in intervention based upon the fact that the real property in question was the community property of herself and the plaintiff and that she had not consented to the execution of the option agreement.

While the court found in favor of the defendants it found that the land was community property and that the plaintiff had acquired title to an undivided two-thirds interest therein after July, 1917. As a conclusion of law,

it was found that the agreement in question was binding with respect to an undivided one-third interest in said land but that the same was not binding with respect to an undivided two-thirds interest. Judgment was entered quieting title in the plaintiff, as such community property, with respect to an undivided two-thirds interest in the land and ordering the plaintiff to convey to the defendants an undivided one-third interest therein upon the payment to him of the sum of $1,000 and upon the payment to the party holding a mortgage on the land of the sum of $7,333.33. From the judgment in favor of the defendants both the plaintiff and the intervener have appealed.

The main point urged in support of the appeal is that the evidence is insufficient to support a portion of the findings wherein the court found "that within the time provided by the said agreement the said R. C. Baker, J. Zwang, Adolph Kreyenhagen and Hans R. Sumpf tendered and offered to pay to the plaintiff the sums specified in said agreement to be paid on account of the purchase price therein provided, and have truly kept and performed all the covenants and conditions of the said agreement on their part to be kept and performed; that plaintiff refused said tender and offer of payment, has at all times refused, and does now refuse said tender and offer". While the respondents concede that the sum of $3,000 was not paid to the plaintiff within the time named in the option agreement and that the same has never been paid to him, it is their contention that they made a timely offer of performance "in substantial conformity with the provisions of the contract".

The evidence relied upon to show an offer of performance in substantial conformity to the option agreement is as follows: On October 29, 1928, the defendant Sumpf wrote a letter to the plaintiff reading as follows:

"October 29, 1928.

"Mr. Ed Bourdieu
    "Coalinga, California
"Dear Sir:
    "Please be advised that in pursuance of that certain Contract of Purchase dated October 1st, 1928, covering your Poloadero Ranch, consisting of approximately 820 acres of land; there has been, this day, placed in escrow at the

Coalinga Branch Los Angeles First National Trust & Savings Bank, the sum of three thousand dollars ($3000.00).

"I suggest that you see me as early as possible in order that we may complete arrangements for closing the transaction.

"Yours very truly,

"HANS R. SUMPF.

"P. S.   I am leaving this afternoon for Los Angeles, but will return to Coalinga, and can see you Saturday, November 3rd, and if it is convenient for you I suggest that you see me on that day so we may close the entire transaction."

This letter was received by the plaintiff on November 1, 1928.   On October 29, 1928, the manager of the bank in Coalinga received from Sumpf and two of the other defendants, the following instructions:

"We hand you herewith:

"(a)   Three thousand dollars ($3000.00).

"(b)   Copy of Contract, Receipt and Option, between Ed. Bourdieu and Hans R. Sumpf dated October 1st, 1928.

"(c)   Copy of assignment of Option between Hans R. Sumpf and Sophie M. Sumpf, and R. C. Baker, J. Zwang, and Adolph Kreyenhagen, a copartnership.

"You are hereby instructed:

"First.   To order preliminary report on the title of the property described as follows: (description).

"Second.   To ascertain from the Bank of South San Francisco the amount due said bank as interest on any mortgage or mortgages existing against the above described property, up to the first day of November, 1928.

"Third.   When you have in your possession a good and sufficient deed conveying the above described property from Ed. Bourdieu and Mary Bourdieu, husband and wife, to R. C. Baker, J. Zwang, and Adolph Kreyenhagen, and Hans R. Sumpf, a copartnership, and the preliminary report above, which are first to be approved by us, then and in that event you are to deliver to Ed. Bourdieu or order any amount out of said three thousand dollars ($3000.00) which may remain, after payment of interest due to November 1st, 1928, on a mortgage or mortgages which we understand now exists against said property, and now held by the Bank of South San Francisco, and any taxes or other lien which may be against the said property, the preliminary report

of title and also one-half of your fees in connection with this escrow.

"Fourth. The copy of Contract, receipt, and Option and Assignment of Option handed you herewith are for your information only and upon fulfillment of instructions under paragraph Third above, you are to deliver these two documents to Hans R. Sumpf.

"Fifth. Upon satisfactory proof to you that the above requirements as to the payment of the balance of twenty-two thousand dollars (as per the Option Agreement) or the assumption or clearing of said mortgage have been satisfactorily complied with, then and in that event you are to deliver said deed to Hans R. Sumpf, et al.

"Yours very truly,
"HANS R. SUMPF,
"A. KREYENHAGEN,
"J. ZWANG."

This manager testified that after receiving these instructions he wrote to the plaintiff as follows:

"This is to notify you that there has been deposited in this office the sum of $3000.00 for payment to you on the contract which you signed with Hans R. Sumpf and Sophie M. Sumpf, on the first day of October, 1928. The said contract covering (description of the property).

"Will you kindly call at your earliest convenience and greatly oblige."

He testified that this letter was mailed on October 29, 1928, but does not say who mailed it, and the plaintiff denied that he ever received it. Another letter is in evidence, reading as follows:

"We hand you herewith three thousand dollars ($3,-000.00), also copy of contract dated October 1st, 1928, and entered into between Ed. Bourdieu and Hans R. Sumpf.

"Said three thousand dollars ($3,000.00) is the payment due on or before November 1st, 1928, and you are therefore instructed to turn said amount over to Ed Bourdieu, or order, upon demand.

"Yours very truly,
"HANS R. SUMPF."

This was handed to the manager of the bank on October 29, 1928, but whether before or after he had written the letter to the plaintiff, above set forth, does not appear. In any

event, nothing in relation to its contents was ever communicated to the plaintiff.

There is evidence that the defendants deposited $3,000 in their own account in this bank on October 29, 1928. On October 30, 1928, the bank issued a cashier's check for $3,000 payable to the plaintiff but kept this check in the escrow in the bank. On November 3, 1928, Sumpf met the plaintiff on the street and asked him if he had received his letter. The plaintiff replied that he had received the letter, and said: "It is not in accordance with our agreement, Mr. Sumpf. You agreed to give me $3000 in cash if you took my place—if you bought my place, I mean, and you failed to do so, so I call the option void."

Some time in November or December of that year the plaintiff told the defendants that his wife would not sign a deed. At the suggestion of the defendants, some time later, some of the parties went to see Mrs. Bourdieu at San Jose and endeavored to get her to sign a deed, which she refused to do. There is evidence that at the conversation when the plaintiff told the defendants that his wife would not sign a deed he asked them whether he could retain twenty acres of the land which surrounded his sheep camp and the defendants told him that if he would place this deed in escrow, in accordance with the escrow instructions, they would give him a deed for that twenty acres. On January 4, 1929, the defendants executed and delivered to the bank a note for $22,000, in which the date of the note and the time of payment were left blank, whereupon the manager of the bank wrote to the plaintiff advising him that $22,000 had been deposited in that office for payment to him in connection with the contract of October 1, 1928. On April 4, 1929, the defendants were allowed by the bank to indorse the cashier's check which had been placed in the escrow in the bank and to withdraw the $3,000 represented thereby, at which time the defendants substituted and left with the bank a note for that amount without date and in which the time of payment was left blank. The manager of the bank testified that the bank has ever since held this note under the escrow instructions relative to the Bourdieu property and at all times has been ready to turn over the money upon presentation of the deed by the plaintiff.

■ It is conceded by both parties, as it must be, that the agreement here in question constituted only an option to purchase the land referred to therein. (*Johnson* v. *Clark,* 174 Cal. 582 [163 Pac. 1004].) In effect, it was an offer to sell the land which would become a binding contract when the offer was accepted by the payment or tender of the money on or before November 1, 1928, in accordance with the time limit contained therein. Until so accepted it was not an agreement which could be specifically enforced. (*California Land Security Co.* v. *Ritchie,* 40 Cal. App. 246 [180 Pac. 625].) ■ Under well-settled principles, the acceptance of such an offer must be unconditional, must be in accordance with the terms of the offer, and an acceptance based upon terms varying from those offered constitutes a rejection of the offer. (*Lambert* v. *Gerner,* 142 Cal. 399 [76 Pac. 63]; *Four Oil Co.* v. *United Oil Producers,* 145 Cal. 623 [79 Pac. 366, 68 L. R. A. 226]; Civ. Code, sec. 1585.)

■ No money was paid to the plaintiff within the time limit prescribed by the contract and the only question remaining is whether a tender or offer of payment was made within the time which was a sufficient compliance with the agreement, which was unconditional or which the plaintiff was bound to accept.

Section 1489 of the Civil Code provides where an offer of performance may be made in the event the person to whom the offer is to be made cannot be found with reasonable diligence. There is no evidence in the record before us that the plaintiff could not be found, that any effort whatever was made to find him or to make to him any tender or offer of performance other than by placing the money in escrow in this bank. The agreement made no provision for any such escrow and even if notice thereof was given to the plaintiff within the time it did not constitute a tender or an offer of performance. Section 1500 of the Civil Code provides that an obligation for the payment of money may be extinguished by due offer of payment if the amount is immediately deposited in the name of the creditor in some bank and notice thereof is given to the creditor. Not only was there no obligation here until one was created by an acceptance of the offer and a sufficient tender, but no money was deposited in the bank in the name of the plaintiff nor was he ever notified that such a thing had been done. The

only money deposited in this bank was in the name of the defendants and while a cashier's check was issued the next day, it was placed in escrow in the bank and the plaintiff was never even notified that it had been issued.

While the agreement called for the unconditional payment to the plaintiff of $3,000 on or before November 1, 1928, the only deposit which was made in the bank even after the cashier's check was issued was held in escrow and the bank was instructed not to deliver any of the money to the plaintiff until it had ordered a preliminary report on the title and ascertained the amount due as interest on the mortgage on the property, and then not until after it had received a deed conveying the property and the defendants had approved the preliminary report on the title. Even at that time the bank was not to turn over the full sum of $3,000 but was to deduct not only the amount of any interest and outstanding liens but also the cost of the preliminary report on the title and one-half of the bank's fees in connection with the escrow. The last item, at least, the plaintiff had never agreed to pay. While the agreement provided that the plaintiff was to receive $3,000 not later than November 1, 1928, and that he was to have until March 1, 1929, to furnish a deed and title, the terms under which the bank held the money required him to furnish a deed before he received such part of the $3,000 as might remain after the payments named. These instructions entirely changed the terms of the contract and the evidence entirely fails to show any tender or sufficient offer to perform.

A further consideration is that even these changed terms were not communicated to the plaintiff within the time allowed. On the last day on which the performance could be made the plaintiff received a letter from one of the defendants, the one with whom he had made the agreement, advising him that $3,000 had been placed in escrow at the bank and suggesting that he see this defendant as early as possible in order that they might complete arrangements for closing the transaction, but advising him that he could not do this until November 3d. So far as is shown by the evidence, this was the only thing received by the plaintiff which even indicated that any attempt was being made to comply with the agreement. This was far from a tender

or offer of performance and, at best, could only inform the plaintiff that the amount which was to be unconditionally paid on that date had been placed in escrow in the bank. The only possible effect of this was to advise the plaintiff that the money had been placed there upon some condition when no condition was authorized by the agreement. In effect, the plaintiff was thus told by the only party interested, so far as he knew, that the money had been deposited upon some condition the nature of which was not disclosed, that it would not be paid to him before November 3d, and not then unless something else was done. If it be assumed that the letter which the manager of the bank says was mailed on October 29th was also received by the plaintiff, it could not be presumed that it was received before November 1st, the date on which the plaintiff received the letter from Sumpf, since the only testimony is that both letters were mailed at Coalinga on the same day. If this letter from the bank was received by the plaintiff, and no matter when it was received, it merely advised him that the sum of $3,000 had been deposited in the bank for payment to him on the contract and asked him to call at his earliest convenience. It did not purport to advise him that the money had been deposited to his account or that the money would be paid to him if he did call. It adds nothing to the letter he did receive from the defendant Sumpf and the plaintiff would be fully justified, if he considered the letter at all, in considering it as a confirmation of Sumpf's statement that the money had been placed in the bank in escrow. The letter handed to the bank by Sumpf on October 29, 1928, stating that $3,000 was inclosed therewith together with a copy of the contract, that the same was the payment due on the contract on or before November 1, 1928, and that the bank was instructed to turn said amount over to the plaintiff upon demand, was never called to the plaintiff's attention and if it be considered as changing instructions to the bank, which was acting as the agent of the defendants, it certainly had no effect in so far as making the money available to the plaintiff is concerned and, regardless of any instructions to the defendants' agent, no tender or offer of performance is shown to have been made to the plaintiff. The bank was unknown to the plaintiff, so far as this transaction is concerned, and no obligation rested

upon him to go to that bank or to make a demand for the money even if he had been notified that such a demand might be honored. The burden rested upon the defendants, if they desired to exercise the option, to pay the money to the plaintiff, or to make an unconditional tender in the manner provided by law.

The respondents seek to bring this case within the rule laid down in *Kofoed* v. *Gordon*, 122 Cal. 314 [54 Pac. 1115], in which it was held that the provisions of section 1501 of the Civil Code are broad enough to include within their scope not only the thing offered but also the conditions upon which the offer of performance is made to depend and that if it is accompanied by improper conditions, which the creditor is not bound to perform, and no objection is made thereto by the creditor, all objections to the improper conditions are waived. This case has no application here. The burden was upon the defendants to make a sufficient tender or offer of performance and to make this to the plaintiff within the time named. The one attempt at performance of this obligation did not constitute a tender or offer of performance but the money was placed in escrow with a third party upon conditions which the defendants had no right to make, and the plaintiff was not even informed what the conditions were or given any opportunity to object to the same.

The deposit of this money with the bank as agent of the depositors, to be paid to the plaintiff only on unauthorized conditions, did not comply with the terms of the option agreement and is not a sufficient tender or offer of performance. (*Segno* v. *Segno*, 175 Cal. 743 [167 Pac. 285]; *Righetti* v. *Righetti*, 5 Cal. App. 249 [90 Pac. 50].) No tender was made, no sufficient offer of performance was brought to the attention of the plaintiff, and we think the evidence entirely fails to sustain that portion of the findings which is here attacked.

It is further urged that the plaintiff, by suggesting a change in the terms and in allowing the defendants to endeavor to secure his wife's signature to a deed some time during November or December, recognized the continued existence of the contract and waived his right to an unconditional payment of the $3,000 within the time named. There can be no waiver as to a right that has been lost.

(*San Bernardino I. Co.* v. *Merrill,* 108 Cal. 490 [41 Pac. 487] ; *Bottle Mining & Milling Co.* v. *Kern,* 9 Cal. App. 527 [99 Pac. 994].) The contract was at an end when the money was not paid or a sufficient tender made on or before November 1st. The evidence indicates nothing other than further negotiations in an effort to make a different contract, which were never completed.

Under the view we take of the main issue presented, the other points raised by both appellants require no consideration.

The finding essential thereto being unsupported by the evidence, that portion of the judgment which is in favor of the defendants is reversed with instructions to the trial court to make findings in accordance with the view herein expressed and to enter a judgment in favor of the plaintiff.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 11, 1935, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 10, 1935.