Filed 8/21/14  Rochambeau v. Wells Fargo Bank CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RODRIQUE ROCHAMBEAU et al.,<br><br>　　　　Plaintiffs and Appellants,<br>v.<br>WELLS FARGO BANK, N.A. et al.,<br>　　　　Defendants and Respondents. | A139088<br><br>(Humboldt County<br>Super. Ct. No. DR120434) |

　　　　Plaintiffs Rodrique Rochambeau and Prince Song Cambilargiu appeal, in propria persona, from a judgment of dismissal following the sustaining, without leave to amend, of demurrers by defendants Wells Fargo Bank, N.A. (Wells Fargo) and HSBC Bank USA, N.A. (HSBC).  On appeal, plaintiffs contend they alleged sufficient facts in their first amended complaint to support causes of action for breach of contract, wrongful foreclosure, and quiet title.  We conclude otherwise and affirm the judgment of dismissal.

**BACKGROUND**

　　　　In December 2005, plaintiff Rodrique Rochambeau obtained a $359,650 loan from First Magnus Financial Corporation (First Magnus) secured by a deed of trust that named Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary and sole nominee for the lender, its successors, and assigns.  In 2006, Wells Fargo became the servicer of Rochambeau's loan.

　　　　By the end of 2008, Rochambeau was behind in his payments by $24,348.29, and NDex West, LLC (NDex), "as agent for Beneficiary," recorded a notice of default in

1

December of that year, despite not being formally substituted as trustee under the deed of trust until January 2009.

Also in January 2009, MERS, as nominee for First Magnus, assigned the deed of trust to HSBC, as "TRUSTEE FOR DBALT 2006-AFI." According to plaintiffs, the recordation of the deed of trust was irregular because it was done over three years after the mortgage pool trust, DBALT 2006-AFI, allegedly closed in March of 2006.

In June 2011, the property was sold through a foreclosure sale. The balance then due on Rochambeau's loan was $452,880.08. Two months after the sale, Cambilargiu, on behalf of Rochambeau, sent Wells Fargo a "draft" in the amount of $387,500.[1] The document, which plaintiffs attached to their operative pleading, did not identify an account from which funds could be taken and required the bearer to process the draft through the Department of Treasury.

In 2012—a year after the trustee's sale and his interest in the property ended— Rochambeau recorded a quitclaim deed, purportedly transferring a 5 percent interest in the property to plaintiff Cambilargiu. Later that year, Rochambeau and Cambilargiu filed a complaint against Wells Fargo, HSBC and First Magnus. Amongst various causes of action, plaintiffs asserted three against Wells Fargo and HSBC: breach of contract, quiet title, and wrongful foreclosure.

Wells Fargo and HSBC demurred to the initial complaint. As to the breach of contract, quiet title, and wrongful foreclosure claims, Wells Fargo and HSBC primarily argued plaintiffs had not alleged tender of the full loan obligation. The trial court sustained the demurrers as to these three causes of action, but granted plaintiffs leave to amend.

---

[1] At defendants' request, the trial court took judicial notice of the date of the foreclosure sale. Taking judicial notice of the legal effect of recorded documents, on demurrer, is appropriate, even if they contradict allegations of a complaint. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264–267 (*Fontenot*) ["a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity"].)

Plaintiffs filed a first amended complaint (FAC), reasserting against Wells Fargo and HSBC the three claims. Defendants again demurred.

At the hearing, the trial court sustained the demurrers with prejudice, then filed a written ruling. The trial court ruled plaintiffs had not properly alleged tender and this was fatal to "any claims pled in the FAC based on the alleged tender of payment." Additionally, as to the wrongful foreclosure and quiet of title claims, the trial court sustained the demurrers on the ground the FAC failed to allege facts demonstrating plaintiffs suffered prejudice from any asserted irregularities in the foreclosure process (such as NDex's signing the notice of default before it was formally substituted as trustee). Rather, plaintiffs were quibbling over formalities while not disputing their delinquency and the appropriateness of foreclosure (had it been carried out with every formality met). The court also ruled the alleged irregularities could not support the breach of contract claim; just as there were no sufficient allegations of prejudice, there were no sufficient allegations of damages.

Plaintiffs timely appealed.

## DISCUSSION

### *Standard of Review*

When the trial court dismisses a case after sustaining a demurrer without leave to amend, we ordinarily "review the complaint de novo to determine whether it contains facts sufficient to state a cause of action under any legal theory" and, if the complaint is lacking, "we then consider whether the court abused its discretion in denying leave to amend the complaint." (*Estate of Dito* (2011) 198 Cal.App.4th 791, 800.) In doing so, we decide whether there is a reasonable possibility any pleading defect can be cured by amendment. (*Whitemore v. Owens Healthcare-Retail Pharmacy, Inc.* (2010) 185 Cal.App.4th 1194, 1199.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th

445, 459.) "Nevertheless, where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*Ibid.*)[2]

### Breach of Contract

In order to state a claim for breach of contract, plaintiffs had to allege the existence of a contract, Rochambeau's performance under the contract, breach by defendants, and resultant damages. (See, e.g., *First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731, 745; *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 104; see also *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277 [A breach is an unjustified failure or refusal to perform a contractual obligation.].)

According to plaintiffs, Wells Fargo and HSBC breached the deed of trust and note by foreclosing on the property despite Rochambeau's "payoff" of the home loan by means of a "Draft Receipt." This argument is meritless.

To begin with, the purported draft was proffered two months *after* the foreclosure sale and thus was two months too late.[3] A trustor may redeem property from foreclosure at any time *prior* to the sale by exercising his equitable right of redemption. (*Knapp v.*

---

[2] In their opening brief, plaintiffs request this court to consider three exhibits purportedly attached to the brief—Exhibit A, a Grant Deed and Deed of Trust; Exhibit B, the opinion *Glaski v. Bank of America, N.A.* (2013) 218 Cal.App.4th 1079 (*Glaski*); and Exhibit C, a document to suggest First Magnus was bankrupt and no longer existed at the time of the execution of the note and deed of trust. However, these proffered exhibits are, in fact, not attached to the brief. In any case, the grant deed and deed of trust were attached as exhibits to the FAC, and therefore are already part of the record. (See *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626–1627 ["facts appearing in exhibits attached to the complaint will . . . be accepted as true"].) California case law, in turn, need simply be cited in the legal discussion of a brief. Finally, with respect to the asserted bankruptcy of First Magnus, plaintiffs do not explain its supposed relevance. We therefore do not "judicially notice" any of these items.

[3] Since the purported draft was attached to the FAC, this court, as did the trial court, can determine, as a matter of law, whether it constituted valid tender of payoff. (See *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 ["We may also take notice of exhibits attached to the complaints. If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence."].)

*Doherty* (2004) 123 Cal.App.4th 76, 87 (*Knapp*).) " 'Once the trustee's sale is completed, the trustor has no rights of redemption.' " (*Ibid.*; *Ballengee v. Sadlier* (1986) 179 Cal.App.3d 1, 5; 4 Miller & Starr, Cal. Real Estate (3d ed. 2013) § 10:266, p. 10-1073 [after a foreclosure sale, "[n]either the trustor nor any other person having an interest in the property can redeem or otherwise recover the property regardless of any willingness to pay the debt"].) Thus, the tardiness of the purported payoff was an incurable legal impediment to the plaintiffs' claim, and the demurrers were properly sustained as to their breach of contract claim on this ground alone.

In addition, the purported draft was not for a sufficient amount. A tender is an offer of performance made with the intent to extinguish an obligation. (Civ. Code, § 1485.) "As a general rule, the debtor in a nonjudicial foreclosure may avoid the loss of the property by 'pay[ing] *all amounts due* at any time prior to the sale . . . .' " (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1444–1445, quoting *Knapp, supra*, 123 Cal.App.4th at pp. 86–87 italics added; *Gaffney v. Downey Savings & Loan Assn.* (1988) 200 Cal.App.3d 1154, 1165 [a credible offer to tender the *full amount* of the indebtedness by the borrower is necessary to set aside a foreclosure sale under a deed of trust].) Here, the purported draft was for less than the amount owed—at the time of the sale Rochambeau owed $452,880, yet the draft was only for $387,500.

Finally, the purported draft was not a form of payment legally sufficient to satisfy Rochambeau's payoff obligation. (See *McElroy v. Chase Manhattan Mortgage Corp.* (2005) 134 Cal.App.4th 388, 392 (*McElroy*) ["court properly sustained Chase's and Finicle's demurrers because the Bill is worthless on its face"].) Notably, the draft failed to identify where the payee could obtain the supposedly-tendered funds—that is, there was no account number identifying where the funds reside. Indeed, Cambilargiu has tried this artifice before and met summary rejection in the United States Court of Appeals for the Eighth Circuit. (See *Cambilargiu v. Bank of America, N.A.* (8th Cir. 2013) 549 Fed.Appx. 590, 591 ["The district court also properly concluded that Cambilargiu's draft instruments were invalid because they were not drawn on a bank, contained no drawee, and conditioned payment upon the passage of 50 years."]; cf. *McElroy*, *supra*,

5

134 Cal.App.4th at p. 392 [a "Bill" purporting to pay off a loan "is *not* a check because it is not drawn on a bank" and otherwise had no legitimacy].)  In short, the purported draft here was "a worthless piece of paper, consisting of nothing more than a string of words . . . signifying nothing."  (*McElroy*, at p. 393.)

In sum, plaintiffs breach of contract claim necessarily fails for lack of valid tender of the debt due at the time of foreclosure.

*Quiet Title*

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649.)  "Allowing plaintiffs to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt."  (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526; see also *Gavina v. Smith* (1944) 25 Cal.2d 501, 506 ["One who violates his contract cannot have recourse to equity to support that very violation."].)

Since, as discussed above, plaintiffs failed to allege any legally adequate tender, their quite title claim, like their breach of contract claim, necessarily fail.

*Wrongful Foreclosure*

Plaintiffs base their wrongful foreclosure claim on the assertion the transfer of interest in the promissory note and deed of trust from MERS to HSBC was improper because assignment of the deed of trust from MERS to HSBC, as trustee for DBALT 2006-AFI, was recorded three years after the mortgage pool trust allegedly closed in 2006.

However, under California law, "the relevant parties to such a transaction [are] the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note," not the person owing under the note.  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507 (*Herrera*) [" 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor.' "].)  "[W]here a deed of trust is involved, the trustee may initiate foreclosure

irrespective of whether an assignment of the beneficial interest is recorded." (*Haynes v. EMC Mortgage Corp*. (2012) 205 Cal.App.4th 329, 336 (*Haynes*); see also *Herrera*, at p. 1510 ["Nothing in the comprehensive statutory scheme governing nonjudicial foreclosures [citations] contains a requirement that [the] assignment of the [deed of trust] . . . must be acknowledged and recorded before the foreclosure sale . . . ."].) "Accordingly, there was no requirement that the assignment from MERS to [HSBC] be recorded prior to the institution of nonjudicial foreclosure." (*Haynes*, at p. 337.) Plaintiffs' wrongful foreclosure theory therefore fails on this ground, alone.

In addition, "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.) "Prejudice is not presumed from 'mere irregularities' in the process." (*Ibid*.) "[E]ven if any subsequent transfers of the promissory note were invalid, [plaintiffs are] not the victim[s] of such invalid transfers because [their] obligations under the note remained unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note." (*Jenkins, supra*, 216 Cal.App.4th at p. 515.) Here, plaintiffs also have not, and cannot, allege prejudice from any alleged delay in the recording of the assignment. (See *Herrera*, *supra*, 205 Cal.App.4th at pp. 1498, 1507 [affirming order sustaining demurrer to wrongful foreclosure action without leave to amend where plaintiffs were not prejudiced].) Nor can they assert the original lender "would have refrained from foreclosure under the circumstances presented." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.) Indeed, Rochambeau was severely in default, his balance owing *far exceeding* the initial value of the loan.

Plaintiffs cite *Glaski, supra*, 218 Cal.App.4th 1079, in support of their assertion they can plead a wrongful foreclosure claim if they allege specific facts showing the foreclosure was not initiated by the correct entity. (*Id*. at p. 1094.) In that case, the Court of Appeal held a borrower, whose loan had been securitized by being placed into a trust formed under New York law, had standing to challenge an assignment of his note

because the defendants failed to assign it before the trust's closing date, creating a defect in the chain of title. (*Id.* at pp. 1096–1097.) The court stated if the assignment was void, the defendant could not initiate a lawful foreclosure proceeding because it did not have a legal right to the property. (*Id.* at pp. 1095–1097.)

In *Glaski*, however, the securitized trust was formed under a New York trust statute that, according to the court, rendered the assignment of the loan "void" because the deed of trust was assigned late. (*Glaski, supra*, 218 Cal.App.4th at p. 1096.) Accordingly, on the basis of that New York statute, the court held the borrower could state a cause of action for wrongful foreclosure. (*Id.* at pp. 1096–1097.) Here, in contrast, no comparable California statute has been cited. Furthermore, *Glaski* has been criticized not only as inconsistent with California's developing foreclosure jurisprudence, but also for adopting an incorrect view of New York's statute. (*Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, 1207 [rejecting *Glaski*, as "California cases hold . . . that even in post-foreclosure actions a borrower lacks standing to challenge an assignment absent a showing of prejudice"]; *In re Sandri* (Bankr. N.D.Cal. 2013) 501 B.R. 369, 374–375 [explaining how *Glaski* unpersuasively departs from California jurisprudence]; *Rajamin v. Deutsche Bank Nat. Trust Co.* (2d Cir. June 30, 2014, No. 13-1614) __F.3d __ [2014 WL 2922317] [rejecting *Glaski* as inconsistent with other courts' interpretations of the New York statute]; see also *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75 [borrower has no standing to challenge assignment of deed of trust]; *Jenkins, supra,* 216 Cal.App.4th 497 [same]; *Fontenot*, *supra*, 198 Cal.App.4th at p. 272 [same].)

For all of the reasons we have discussed, the trial court properly sustained the demurrers interposed by Wells Fargo and HSBC. Additionally, denial of leave to amend was appropriate, as plaintiffs have not articulated facts that would overcome the deficiencies in their FAC. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

We also reject plaintiffs' vague and unsupported due process and equal protection claims. Plaintiffs' allegations were appropriately heard in a California superior court

without any irregularities that would raise questions about the legitimacy of the result. (See *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 543 ["Due process is the opportunity to be heard at a meaningful time and in a meaningful manner."].) Plaintiffs also have not identified any cognizable discrimination that would support an equal protection claim.

<b>DISPOSITION</b>

The judgment of dismissal is affirmed.


_____
Banke, J.


We concur:


_____
Humes, P. J.


_____
Margulies, J.