[No. G034588. Fourth Dist., Div. Three. Nov. 1, 2005.]

TERRY McCELROY et al., Plaintiffs and Appellants, v.
CHASE MANHATTAN MORTGAGE CORPORATION et al., Defendants
and Respondents.

**COUNSEL**

David Burkenroad for Plaintiffs and Appellants.

Adorno Yoss Alvarado & Smith, John M. Sorich, S. Christopher Yoo and Sunny K. Hur for Defendants and Respondents Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation and Loanstar Mortgage Services, LLC.

Green & Hall, George L. Hampton IV and Michael J. Fairchild for Defendant and Respondent Charlene Finicle.

## OPINION

**IKOLA, J.**—The McElroys brought an action for quiet title, declaratory relief, and fraudulent foreclosure against their lender, Chase Manhattan Mortgage Corporation, its substituted trustee, Loanstar Mortgage Services (Chase and Loanstar are collectively referred to as Chase), and Charlene Finicle, purchaser of the real property after the foreclosure sale. The court sustained without leave to amend Chase's and Finicle's demurrers to the McElroys' amended complaint.[1] We affirm the judgment.

### FACTS

The McElroys' first amended complaint alleged the following facts: The McElroys defaulted on a loan secured by a deed of trust on their Mission Viejo property (the property). To redeem the loan, the McElroys tendered payment to Chase in the form of a "Bonded Bill of Exchange Order" (the Bill) in the sum required to pay off the loan. Attached to the Bill were instructions on how to process it with the United States Department of the Treasury. The instructions stated, inter alia, that plaintiff Mi McElroy had established a "Personal UCC Contract Trust Account" with the Department of the Treasury, and that the Bill was a negotiable instrument, should be processed as a check, and sent by certified mail to the Secretary of the Treasury. Chase refused to process (or ignored) the Bill. The McElroys followed up by causing "Barton Buhtz, Consumer Advocate" to send further instructions to Chase on how to "redeem" the Bill. Chase did not respond to the letter. Subsequently, Chase sold the property to La Vina Dr. Trust (La Vina) at a nonjudicial foreclosure sale. Finicle bought the property from La Vina about four months later.

The McElroys filed a complaint against Chase to quiet title and alleging other causes of action. Chase demurred, arguing, inter alia, that it "was under no obligation to accept the [Bill] as it is illegal to do so." The court sustained Chase's demurrer and granted the McElroys 20 days to amend their complaint.

The McElroys filed an amended complaint, this time against Chase and Finicle, alleging four causes of action. The first sought to quiet title to the

---

[1] The court's order sustaining Finicle's demurrer is a nonappealable order. (Code Civ. Proc., § 904.1.) Although a judgment of dismissal was entered as to Chase's demurrer, no judgment was entered for Finicle. To avoid delay, we deem the order sustaining Finicle's demurrer to include a judgment of dismissal. (*Hinman v. Department of Personnel Admin.* (1985) 167 Cal.App.3d 516, 520 [213 Cal.Rptr. 410].)

property on the theory the foreclosure was fraudulent because Chase's "refus[al] to process" the Bill and its "lack of response" to the Buhtz letter of instructions discharged the debt. The second cause of action, for declaratory relief, asked the court to declare their debt discharged by Chase's lack of response to the tender and to set aside the foreclosure sale. The third and fourth causes of action, for damages against Chase only, alleged Chase violated the Fair Debt Collection Practices Act (15 USC § 1692 et seq.), and "engaged in a fraudulent foreclosure."

Chase demurred to the amended complaint. The court sustained Chase's demurrer without leave to amend, ruling, inter alia, that: (1) the quiet title claim failed to state a cause of action because Chase was not "claiming any ownership interest" in the property; and (2) the declaratory relief request and the damages allegations for violation of the Fair Debt Collection Practices Act and for fraudulent foreclosure failed to state causes of action "because Chase was under no obligation to accept tender of the [Bill], as it is illegal to do so."

Finicle demurred to the amended complaint's quiet title and declaratory relief causes of action,[2] arguing, inter alia, that Finicle and her seller, La Vina, were entitled to a conclusive presumption that the trustee's sale was valid. The court sustained Finicle's demurrer without leave to amend.

## DISCUSSION

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

On appeal the McElroys contend the court improperly sustained the demurrers of Chase and Finicle to the amended complaint. As to the third cause of action, which alleged Chase violated the Fair Debt Collection Practices Act, the McElroys "have waived this issue on appeal by failing to support it by argument or citation of authority." (*San Mateo County Coastal*

---

[2] Only the quiet title and declaratory relief claims were directed against Finicle.

*Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 559 [45 Cal.Rptr.2d 117].)

With respect to the other causes of action, the court properly sustained Chase's and Finicle's demurrers because the Bill is worthless on its face. The Bill expressly provides that the Secretary of the Treasury's obligation (presumably to pay the face amount of the Bill) "arises out of the want of consideration for the pledge and by the redemption of the pledge under Public Resolution HJR-192, Public Law 73-10 and *Guaranty Trust Co. of NY v. Henwood et al.,* [(1939)] 307 U.S. 247 [83 L.Ed. 1266, 59 S.Ct. 847] (FN3) . . . ." The instructions attached to the Bill also referred to the Bill as a "Negotiable Instrument."

■ First, we observe the Bill is *not* a negotiable instrument because it is not made "payable to bearer or to order" as required by California Uniform Commercial Code section 3104, subdivision (a)(1). Further, although a "check" qualifies as a negotiable instrument, even if not payable to bearer or order (Cal. U. Com. Code, § 3104, subd. (c)), the Bill is *not* a check because it is not drawn on a bank. (See Cal. U. Com. Code, § 3104, subd. (f).)

Moreover, the Bill's illegitimacy as a nonnegotiable draft is exposed by reading footnote 3 of *Guaranty Trust Co. of New York v. Henwood, supra,* 307 U.S. 247, 251–252 [83 L.Ed. 1266, 59 S.Ct. 847] (*Henwood*), pursuant to which the obligation of the Secretary of the Treasury to honor the Bill allegedly arises. Footnote 3 recites the full text of the Joint Resolution of Congress approved on June 5, 1933, which declares " 'any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, . . . to be against public policy' " and further mandates that any obligation " 'shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender . . . .' " (*Henwood*, 307 U.S. at pp. 251–252, fn. 3.)

Nothing contained in the Joint Resolution of Congress, or in the decision of the United States Supreme Court in *Henwood*, creates (or even suggests) any obligation on the part of the Secretary of the Treasury to pay the Bill. Nor does the Joint Resolution of Congress or *Henwood* have anything whatsoever to do with a private "pledge," or the "redemption of a pledge," or

the authorization or creation of any "Personal UCC Contract Trust Account."[3] Since the Bill purports to identify the source of the Secretary of the Treasury's obligation to honor the Bill, and the cited source does not establish an obligation, we unhesitatingly conclude the Bill is a worthless piece of paper, consisting of nothing more than a string of words that sound as though they belong in a legal document, but which, in reality, are incomprehensible, signifying nothing.[4] The most legitimate part of the Bill is the notation appearing at the bottom of the document: "Void Where Prohibited By Law."

But the McElroys nevertheless contend "the trustee's sale was tainted by fraud as the debt that Chase sought to foreclose was discharged by the failure of Chase to make any response to the tender of payment by plaintiffs on February 7, 2003." Relying on Civil Code section 1501 and Code of Civil Procedure section 2076, the McElroys conclude that Chase's alleged failure to respond waived any objections to their tender of payment thereby discharging the debt by operation of law.

Civil Code section 1501 provides: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated." Code of Civil Procedure section 2076 states: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money,

---

[3] Indeed, work on the Uniform Commercial Code (UCC) was not begun until 1942, some three years after the *Henwood* decision and nine years after the Joint Resolution of Congress. Moreover, the UCC was not adopted as the law of any state until 1953 when Pennsylvania adopted it, 14 years after the *Henwood* decision and 20 years after the Joint Resolution of Congress. (See Gen. Introduction, Cal. U. Com. Code, p. XLI.)

[4] After reciting the purported source of the Secretary of the Treasury's obligation, the Bill continued: "This claim document Order is hereby surrendered as said pledge is redeemed (discharged) by the drawer through the attached document by acceptance for value and exempted from levy. Federal regulations require Claimant's financial institution is to accept this bill, sign and present directly via Certified or Registered mail, Return Receipt to the Secretary of the Treasury—Department of the Treasury on Drawer's UCC Contract Trust Account. Unless the original Negotiable Instrument is dishonored in writing with 15 days of receipt by the Secretary of the Treasury Claimant's financial institution is to release the credit on hold to the payee (Claimant) within the time stipulated by Regulation 'Z', Truth in Lending Act or on the date designated, whichever is later. The amount of this accepted draft is to be ledgered by Claimant's financial institution, TTL Department, to the designated account for the discharge of this claim (Regulation Z). Bond # C11822204. [¶] NOTICE: The law relating to principal and agent applies."

the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

■ "The purpose of these two code sections is to allow a debtor who is willing and able to pay his debt to know what his creditor demands so that the debtor may, if he wishes, make a conforming tender." (*Noyes v. Habitation Resources, Inc.* (1975) 49 Cal.App.3d 910, 914 [123 Cal.Rptr. 261].) "These statutory provisions do not apply where, as here, the amount of the creditor's demand is known to the debtor and the amount of the tender is wholly insufficient." (*Gaffney v. Downey Savings & Loan Assn.* (1988) 200 Cal.App.3d 1154, 1166 [246 Cal.Rptr. 421].) Here, the complaint alleges the McElroys knew the precise amount of their creditor's demand. In the face of their knowledge of the precise amount necessary to cure their default on the loan, the McElroys "tendered" a worthless piece of paper. Their "tender" was not only "wholly insufficient," it amounted to no tender at all. The McElroys would have us hold that the tender of a worthless document pays off a $256,000 debt because the creditor fails to object to the "tender." We decline to do so.

We also note the McElroys *knew* their tender of the Bill was not acceptable to Chase for several months before the foreclosure, during which time the law permitted them to reinstate the loan by bringing the delinquent payments current. (See Civ. Code, § 2924c, subd. (a)(1) [loan can be reinstated until five business days before sale by paying delinquent payments together with expenses].) The complaint alleges the Bill was tendered on February 7, 2003. We take judicial notice of the "Notice of Default and Election to Sell under Deed of Trust" recorded on behalf of Chase in the Orange County official records on February 28, 2003, which shows only $7,238.24 was required to reinstate the loan and avoid foreclosure, the "Notice of Trustee's Sale" recorded on June 3, 2003, and the "Trustee's Deed Upon Sale" recorded on July 2, 2003. Thus, had the McElroys been able to cure the defective tender, they had ample opportunity to do so.

Because the Bill is worthless on its face, the McElroys did not make a proper tender under Civil Code sections 2905 and 2924c, subdivision (a)(1) to cure the default, foreclosure was therefore proper, and the amended complaint failed to state a wrongful foreclosure cause of action. Accordingly, the McElroys had no adverse claim to the property and thus failed to state a quiet title or declaratory relief cause of action.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.