Filed 9/5/25  JPMorgan Chase Bank v. Precision Diagnostic Imaging CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | B335992 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 22NWCV00324 |
| v. | |
| PRECISION DIAGNOSTIC IMAGING, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Olivia Rosales, Judge.  Affirmed.

Reich Radcliffe & Hoover and Richard J. Radcliffe for Defendants and Appellants.

Aldridge Pite and Drew A. Callahan for Plaintiff and Respondent.

_____

## SUMMARY

Plaintiff JPMorgan Chase Bank, N.A. (Chase) sued Precision Diagnostic Imaging, Inc. and two guarantors (collectively, Precision) for breach of contract, based on their failure to pay the principal balance remaining on a small business loan.  The trial court granted Chase's motion for summary judgment.  We affirm.

## FACTS

On November 17, 2010, Chase and Precision executed a U.S. Small Business Administration Note and a Business Loan Agreement as lender and borrower respectively.  The loan amount was $500,000 and the interest rate was variable, adjusted monthly.  The maturity date (after a June 3, 2011 modification) was June 1, 2021.  Defendants Minh Q. Ta and Bernadette M. Carolipio-Ta (guarantors) guaranteed payment of all amounts owing under the note.

Other provisions of the note included these:  "Borrower is in default under this Note if Borrower does not make a payment when due under this Note."  The lender's rights if there is a default include that the lender may "[r]equire immediate payment of all amounts owing under this Note."

In April 2022, Chase sued Precision for breach of contract and common counts (money lent and account stated).  The complaint alleged Chase had "performed all obligations on its part to be performed under the terms of the Contract"; Precision had defaulted and "the principal sum of $370,502.55 plus late fees and costs" was due and unpaid; and guarantors had each failed to cure the default.

Precision answered with a general denial and fourteen affirmative defenses.

2

### 1. Chase's motion for summary judgment

In September 2022, Chase moved for summary judgment, or alternatively for summary adjudication of claims. The motion was supported by the declaration of Barbara J. Lopez, a Chase employee responsible for managing the loan to Precision. She identified and presented copies of the loan documents already described. Ms. Lopez stated that Precision "has failed to pay under the terms of the Contract and is in default," and identified two additional exhibits showing payments, advances, and fee assessments.

The first exhibit showed the transaction history of the loan reflecting "payments made, advances taken under, and the assessment of fees on the Contract" prior to December 15, 2011. On that date, "the servicing of the Contract was moved to a system Chase uses to service certain severely delinquent loans."

The other exhibit was a screen print from the system used to service delinquent loans, "account[ing] for the payments made, advances taken, and fees assessed pursuant to the Contract after servicing of the Contract was moved."

Ms. Lopez stated that the two exhibits "confirm that no payments have been made on the Contract since December 3, 2020 and that, as of August 26, 2022, Chase is owed the principal balance of $370,502.55, and late fees and costs of $1,268.23."

Chase's separate statement of undisputed facts mirrored the facts stated in the Lopez declaration.

After a continuance, the summary judgment hearing was scheduled for January 19, 2023.

### 2. Precision's opposition

Precision's opposition was due on January 5, 2023. On that date, defense counsel filed an opposition declaration, seeking a

continuance in order to depose Ms. Lopez (whose deposition was then scheduled for January 31, 2023), and obtain other outstanding discovery. Defense counsel sought to explore whether Chase "did in fact comply with its obligations under the loan documents, as alleged in its Complaint . . . , but unsupported by any declaration or even Plaintiff's Separate Statement."

On January 19, 2023, the court continued the hearing to March 16, 2023. The court did so "[i]n the interests of justice, and in favor of adjudicating this Motion on the merits," observing that the information to be derived from Ms. Lopez's deposition "is important to Defendants' Opposition."

On March 2, 2023, Precision filed its opposition, supported by substantially similar declarations from the two defendant guarantors. Those declarations pointed out that the interest rate on the loan was adjusted monthly (".496% of the LIBOR Base Rate") and this meant that the amount to be paid each month varied (the principal amount to be paid each month did not). "As a result, [Precision] was dependent on JPMorgan Chase Bank to send monthly statements with the correct monthly payment to be made."

The declarations stated that at the outset, Chase provided monthly "commercial loan invoices" showing the principal, interest and total payment due, but stopped providing those invoices in December 2011. The last invoice Chase provided was the November 17, 2011 invoice for the payment due on December 1, 2011.

The guarantors declared that after December 2011, they "made repeated requests" that Chase provide them with monthly invoices "so that [Precision] could make the precise payment that [Chase] required or was thought was due," but their "myriad

4

entreaties" were ignored. "Because [Chase] did not comply with its obligations under the Note (and otherwise) to provide this payment information . . . [Precision] had no ability to know precisely what amount it needed to pay each month," and "[a]s a result, [Precision] made payments of round figures to [Chase]." The guarantors pointed out that Ms. Lopez's exhibit showed that Precision "made multiple payments of $5,000 in 2015 and 2016 . . . and also various round payments of $2,500, $3,000, $2,000, and $1,000 through December, 2020." (These "round figure[]" payments did not begin until December 2015, three years after Chase's last invoice.)

The guarantors' declarations also stated that Chase knew "that the purpose of the loan was the purchase of equipment," but Chase "never undertook any action to take the collateral, sell it, or apply any proceeds to the alleged loan balance." They further stated that Precision "never received any tax statements, such as forms 1098, to show the amount of interest that it paid to [Chase]," and this caused damages to Precision because it was unable to deduct this business expense from its taxes.

Thus, Precision's separate statement, based on the guarantors' declarations, purported to dispute Chase's evidence of Precision's default and failure to pay by claiming "there cannot be a 'default' of defendants" because Chase "materially breached" its obligations to perform under the loan documents by "fail[ing] to send invoices after December 17, 2011 to Defendants showing payment amount, including adjustable interest."

Precision also offered as "additional material facts" two points: (1) Chase failed to mitigate its damages because it did not pursue the collateral and apply its value or proceeds to the debt (citing a UCC financing statement and Ms. Lopez's deposition

5

testimony); and, (2) "[in] furtherance of Defendants' affirmative defense of off-set or setoff," Chase caused damages to Precision because it failed to provide any tax statements (citing the guarantors' declarations).

### 3. Chase's reply

Chase's reply included a supplemental declaration from Ms. Lopez.

Ms. Lopez began by stating that under the note, payments were due on the first calendar day of every month, and payments received more than 10 days after the due date were considered late. The failure to "make a payment when due under this Note" is a default under the terms of the note.

Referring to the transaction history submitted with her initial declaration, Ms. Lopez stated: Precision defaulted on its initial payment obligation by making the first payment late. Precision made regular payments in February and March 2021. In April and May 2011, Precision again defaulted by failing to make timely payments. In June 2011, Precision "failed to make a payment, late or otherwise." In July 2011, Precision "made two payments – again late – while at the same time maxing out the Loan." In August 2011, Precision "defaulted again by making a late payment, and then further defaulted in September 2011 by failing to make any payment." In October and November, Precision "again made late payments."

"By December 14, 2011, after Defendants' repeated defaults and Chase still not having received the payment due on December 1st, the Loan was sent to Collections and no further invoices were sent." (Under the business loan agreement, if an event of default occurs, "all commitments and obligations of Lender . . . immediately will terminate . . . .") And, Ms. Lopez

6

stated, "[a]fter the Loan was sent to Collections, no interest has been accrued or added to the total amount owed by Defendants."

Ms. Lopez stated that after the note was sent to collections, Precision made payments totaling $111,449.78, but "at no time did Chase and Defendants enter into a settlement or forbearance agreement and at no time did Chase accept the payments as a cure for the repeated defaults." The payments "were subtracted from the principal amount Defendants owed," and "[n]o payments were applied to interest," which "[had] not been accruing."

### 4. Supplemental filings

At the hearing on March 16, 2023, the court exercised its discretion to consider new evidence in reply papers supporting a summary judgment motion, and continued the hearing to May 25, 2023, to provide Precision with an opportunity to respond to that evidence.

In their supplemental opposition on May 16, 2023, Precision sought another deposition and a continuance to address Ms. Lopez's statement that "at no time did Chase accept the payments as a cure for the repeated defaults." At the May 25, 2023 hearing, the trial court again continued the hearing, this time to August 3, 2023, to allow the deposition to take place.

In its second supplemental opposition on July 20, 2023, Precision submitted a declaration from counsel with several exhibits. The exhibits included an August 22, 2019 letter from Chase to Precision, stating that Chase could accept a temporary payment plan of $1,000 per month for 12 months beginning on September 20, 2019 and ending August 20, 2020, and several cashed checks for $1,000, dated in April, May and December 2020. (The letter also stated that "[t]his is a temporary payment plan and is not a modification of the loan," and "[y]ou should not

interpret anything in this letter as a waiver of any other term or condition of the loan agreement and/or any other loan documents.")

Precision also included a supplemental separate statement with two "additional material facts." One of these referred to the temporary payment plan and the "reduced payments" that Chase accepted in 2019 and 2020, "[i]n furtherance of Defendants' affirmative defenses of waiver and estoppel." The other was the fact that Chase "accepted and deposited without objection or reservation 'late' or 'partial' payments after declaring defaults, including $111,449.78 after sending the matter to collections in December, 2011."

Chase filed a second supplemental reply, contending there was no actual dispute of material fact; Chase fully performed by extending the loan; Precision was in breach for failure to make all payments when due; and the outstanding principal loan balance remained due and owing to Chase.

### 5. The trial court's ruling

The court concluded Chase met its initial burden to establish a breach of contract. The court rejected Precision's contention that Chase failed to perform by not providing invoices after December 17, 2011, and likewise rejected their claim that Chase waived the defaults by accepting payments after the loan was sent to collections. The court pointed out there was no evidence of a modification; Chase "is not obligated to accept the late payments as a cure for the initial defaults"; the payments were subtracted from the principal amount Precision owed; and the temporary payment plan stated it was not a modification and should not be construed as a waiver of the terms of the loan agreement.

8

Accordingly, the court concluded Precision "ha[s] not raised any triable issues of fact sufficient to warrant denial" of Chase's summary judgment motion, and the alternative motions for summary adjudication were "rendered moot."

The trial court entered judgment on November 27, 2023, and Precision filed a timely notice of appeal.

## DISCUSSION

A plaintiff moving for summary judgment "has met [its] burden of showing that there is no defense to a cause of action if [the plaintiff] has proved each element of the cause of action entitling [the plaintiff] to judgment on the cause of action." (Code Civ. Proc, § 437c, subd. (p)(1).)  Once the plaintiff has done so, "the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Ibid.*)  Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.,* subd. (c).)

Summary judgment is no longer a "disfavored" procedure and "is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)  We review the trial court's decision de novo.  (*Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611, 620.)

Precision offers two arguments.

Precision first contends that Chase did not meet its initial burden of proof, so the burden of producing evidence of a triable issue of material fact "as to the cause of action or a defense thereto" (Code of Civ. Proc., § 437c, subd. (p)(1)) never shifted to Precision.  Specifically, Precision contends Chase did not present

9

evidence of its performance under the contract, because the Lopez declaration did not expressly state that Chase "performed all of its duties, obligations, or promises required under the loan agreements."

We reject this hyper-technical contention that asks us to ignore the obvious facts for the lack of preferred words. Chase's complaint alleged Chase had "performed all obligations on its part to be performed under the terms of the Contract," and its memorandum likewise stated that Chase "performed all of its obligations under the Contract by extending a loan to [Precision]." Moreover, Chase's evidence – the loan documents, the transaction histories and the Lopez declarations – together established that Chase extended the loan in its entirety to Precision. Thus it was up to Precision to produce evidence showing a triable issue exists "as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).)

Precision's second argument is that they produced evidence showing disputed issues of material fact with respect to (1) Chase's breach of its obligations under the loan agreements, (2) Precision's waiver defense, (3) their defense that Chase failed to mitigate its damages, and (4) their defense of "offset/setoff." Precision is mistaken.

First, Precision says Chase breached the loan agreements by failing to send invoices after December 17, 2011, so they did not know how much to pay. No evidence supports that contention. Chase stopped sending invoices after it sent the loan to collections, following Precision's repeated defaults by failing to make payments when due. Under the note, in the case of a default, Chase had the right to require immediate payment of all amounts owing under the note. At that stage, there was no point

10

in sending monthly invoices, and in any event Chase had no obligation to do so.  Under the business loan agreement, if an event of default occurs, "all commitments and obligations of Lender . . . immediately will terminate . . . ."  Moreover, as Ms. Lopez declared, no interest accrued after the loan was sent to collections. Nor was post default interest sought in this lawsuit. Even if the contract required invoices, the breach would be immaterial.

Second, Precision contends Chase waived Precision's defaults by accepting payments "without objection long after it declared defaults."  Precision contends that Chase's acceptance of late payments during 2011 cured those defaults, and in addition Chase accepted payments of over $111,000 between 2015 and 2020, including the reduced payments under the temporary payment plan in 2019.  These facts do not help Precision.  It is correct that acceptance of a late payment cures that default. (*Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 711 [" 'Speaking generally, the acceptance of payment of a delinquent installment of principal or interest cures that particular default.' "].)  Here, however, it is undisputed that Precision defaulted on the loan in December 2011, and Chase sent it to collections, as was its right.  The acceptance of subsequent payments (beginning years later) does not constitute a waiver of that default.  Precision presented no evidence of any modification of the terms of the loan, and the temporary payment plan explicitly stated that it was not a modification or a waiver of any other term or condition of the loan agreement.

Precision cites Civil Code section 1501 and Code of Civil Procedure section 2076 to support their waiver claim, but do not explain why those statutes apply to these circumstances, and

11

they do not. Civil Code section 1501 states that "[a]ll objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated." Code of Civil Procedure section 2076 states: "The person to whom a tender is made must, at the time, specify any objection he may have . . . or he must be deemed to have waived it; and if the objection be to the amount of money, . . . he must specify the amount . . . which he requires, or be precluded from objecting afterwards." We fail to see how these statutes could apply in the circumstances here, where Precision had been in default for several years before making the "round figure[]" payments. (See *Noyes v. Habitation Resources, Inc.* (1975) 49 Cal.App.3d 910, 914 ["The purpose of these two code sections is to allow a debtor who is willing and able to pay his debt to know what his creditor demands so that the debtor may, if he wishes, make a conforming tender."]; cf. *Gaffney v. Downey Sav. & Loan Assn.* (1988) 200 Cal.App.3d 1154, 1166 ["These statutory provisions do not apply where, as here, the amount of the creditor's demand is known to the debtor and the amount of the tender is wholly insufficient."].)

Third, Precision repeats its argument that Chase took no action to sell the collateral, thereby failing to mitigate its damages. This is a mistaken notion, too. Under the note, Chase has the right to sell or dispose of any collateral, but Precision does not point to any provision of the loan documents that requires Chase to do so.

Finally, Precision repeats its "offset/setoff" defense, that is, their inability to deduct from their taxes the interest they paid Chase because Chase provided no tax statements. This assertion

12

does not create a dispute of material fact.  For one thing, Precision could ascertain the amount of interest it paid from the invoices Chase provided until December 2011, and after Chase sent the loan to collections, no interest accrued.  In any event, we fail to see how the asserted facts, if true, could be deemed material.

## DISPOSITION

The judgment is affirmed.  Chase shall recover costs on appeal.


RUBIN, J.*

WE CONCUR:


WILEY, Acting P. J.


VIRAMONTES, J.

---

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.